# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Soo Line Railroad Company, a Minnesota corporation doing business as Canadian Pacific, | Civil No. 09-2311 (DWF/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| City of Saint Paul and Gerald T. Hendrickson,[1] City Attorney for the City of Saint Paul, | |
| Defendants. | |

___

Andrew W. Davis, Esq., Byron E. Starns, Jr., Esq., and Tracey Holmes Donesky, Esq., Leonard Street and Deinard, PA, counsel for Plaintiff.

Louise Toscano Seeba, Assistant City Attorney, Saint Paul City Attorney's Office, counsel for Defendants.

___

## INTRODUCTION

This lawsuit arises out of a plan by the City of Saint Paul (the "City") to seek a permanent easement for a bicycle/pedestrian trail on property owned by Soo Line Railroad Company, doing business as Canadian Pacific ("CP"). This matter is before the Court pursuant to CP's Motion for Partial Summary Judgment. For the reasons stated below, the Court grants CP's Motion.

___

[1] Gerald T. Hendrickson has succeeded John Choi by being appointed as interim Saint Paul City Attorney. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Hendrickson is now automatically substituted for John Choi.

# BACKGROUND

CP owns an active railroad right-of-way, a portion of which runs along Ayd Mill Road between Marshall Avenue and Victoria Street. The right-of-way is part of CP's Short-Line, which connects Minneapolis and the City. It is used for the daily movement of freight and passenger trains. The City seeks to acquire a 24-foot wide strip of the right-of-way along Ayd Mill Road between Marshall Avenue and Victoria Street for the development of a bicycle/pedestrian trail. The strip would occupy approximately 2.1 miles of CP's right-of-way along Ayd Mill Road. According to the City, the distance between the proposed trail and the center of CP's tracks would vary between 29 to 39 feet, and at the closest point, the edge of the trail would be approximately 33 feet from the center line of CP's tracks. The City also explains that the proposed design includes a six-foot high fence to separate the proposed trail from the railroad tracks.

CP has opposed the City's plan for approximately seven years, asserting that it has concerns about the proposed trail's impact on safety, access for emergency and maintenance vehicles, and CP's current and future use of the right-of-way. In August 2009, the City issued an order authorizing its officers and the City Attorney to take the necessary actions, including initiating longitudinal condemnation proceedings, to acquire a permanent easement in the right-of-way along Ayd Mill Road between Marshall Avenue and Victoria Street for the development of the proposed trail. On September 1, 2009, CP filed a four-count Complaint in this Court seeking declaratory and injunctive relief and money damages. Specifically, CP (1) seeks a declaration that the

City's proposed condemnation is preempted by the United States Constitution and the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10501; (2) alleges that the City's actions violate the Federal Commerce Clause; (3) asserts a claim under 42 U.S.C. §§ 1983 and 1988; and (4) alleges a claim under Minnesota's prior public use doctrine.

Prior to conducting any discovery, CP filed a motion for partial summary judgment on its declaratory judgment claim under the ICCTA. CP seeks a declaration that the City's proposed condemnation is *per se* preempted by the ICCTA. In the alternative, CP seeks a declaration requiring the City to petition the Surface Transportation Board ("STB") for a determination that the City's proposed trail does not constitute "regulation" of rail transportation before the City initiates any condemnation proceedings against CP.

## DISCUSSION

**I.     Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

3

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. The ICCTA

A state law that conflicts with a federal law is preempted under the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2. A court must look to congressional intent as the "ultimate touchstone" in determining whether Congress exercised its power under the Supremacy Clause when it enacted the ICCTA so as to preempt a particular action. *Gade v. Nat'l Solid Waste Mgmt. Ass'n*, 505 U.S. 88, 96 (1992). "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993). "[P]reemption will not lie unless it is 'the clear and manifest purpose of Congress.'" *Id*. at 664 (quoting *Rice v. Santa Fe Elevator Corp*.,

4

331 U.S. 218, 230 (1947)). To discern Congress' intent, a court examines the explicit statutory language and the structure and purpose of the statute. *Gade*, 505 U.S. at 96. There are three categories of federal preemption: (1) express, (2) implied or field, and (3) conflict. *Nordgren v. Burlington N. R. Co.,* 101 F.3d 1246, 1248 (8th Cir. 1996). Here, CP argues that the City's planned condemnation is expressly or *per se* preempted by the ICCTA.

Federal regulation of the railroad industry was expanded in 1995 when Congress enacted the ICCTA to effectuate its aim of centralizing railroad regulation. *See Union Pac. R.R. Co. v. Chicago Transit Auth.*, No. 07-cv-229, 2009 WL 448897 (N.D. Ill. Feb. 23, 2009). The statute provides, in relevant part, that:

> (b) The jurisdiction of the Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*.

49 U.S.C. § 10501(b) (emphasis added). As defined in the ICCTA, "transportation" has a very broad meaning that includes "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, *property*, facility, instrumentality, or equipment of any kind related to

5

the movement of passengers or property, or both, by rail, regardless of ownership or agreement concerning use." 49 U.S.C. § 10102(9)(A) (emphasis added). Similarly, the act has an expansive definition of "railroad" that includes "a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and *ground*, used or necessary for transportation." 49 U.S.C. § 10102(6)(C) (emphasis added).

In 2005, the STB (the agency that Congress created to administer the ICCTA) noted that, based on the express language of the ICCTA, it was difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations. *CSX Transp., Inc.-Pet. for Declaratory Order*, 2005 WL 1024490, at *2 (S.T.B. May 3, 2005). Specifically, the STB described the preemptive effect of section 10501(b) as follows:

> [T]he courts have found two broad categories of state and local actions to be preempted regardless of the context or rationale for the action. The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized.
>
> Second, there can be no state or local regulation of matters directly regulated by the Board-such as the construction, operation, and abandonment of rail lines (see 49 U.S.C. §§ 10901-10907); railroad mergers, line acquisitions, and other forms of consolidation ( see 49 U.S.C. §§ 11321-11328); and railroad rates and service (*see* 49 U.S.C. §§ 10501(b), 10701-10747, 11101-11124)[.]

*Id*. If a proposed regulation does not fall within the two categories described above, then a "section 10501(b) preemption analysis requires a factual assessment of whether the action would have the effect of preventing or unreasonably interfering with railroad transportation." *Id*. at *3.

CP asserts that under the broad language of the ICCTA's express preemption clause, the City's longitudinal condemnation of CP's right-of-way is *per se* preempted as regulation of "transportation." The City responds that its proposed condemnation proceeding does not conflict with the ICCTA because it does not unreasonably interfere with railroad operations. The City accuses CP of improperly attempting to side step a factual inquiry by moving for partial summary judgment before discovery has been conducted. The City asserts that the impact of a longitudinal condemnation can only be determined by a trial and that, unless the condemnation is found to unreasonably interfere with CP's operations, it is not preempted.

After carefully reviewing the cases cited by the parties, the Court agrees with CP. The ICCTA explicitly provides that its remedies are exclusive with respect to the regulation of rail transportation. 49 U.S.C. § 10501(b). A review of case law and of the ICCTA's legislative history confirms a broad reading of § 10501(b). *See, e.g., City of Lincoln v. Surface Transp. Bd.*, 414 F.3d 858, 860-63 (8th Cir. 2005) (affirming the STB's finding that city's proposed taking was federally preempted and discussing broad reach of the ICCTA); *see also Union Pacific*, 2009 WL 448897, at *5 (citing cases and discussing legislative history addressing the ICCTA's broad scope).

Given that the definition includes the term "property," the City's proposed condemnation of the 24-foot wide strip of the right-of-way falls squarely within the definition of "transportation" as defined by 49 U.S.C. § 10102(9)." And, it is undisputed that CP is a "rail carrier" as defined by the ICCTA. *See* 49 U.S.C. § 10102(5). As such,

the City's proposed condemnation concerns transportation by a rail carrier. While the ICCTA does not define the term "regulation," "its dictionary definition jibes [sic] with its common meaning: regulation is the act or process of controlling by rule or restriction." *Union Pacific*, 2009 WL 448897, at *6 (internal citations omitted). Because the City's proposed condemnation seeking a permanent easement would be an act seeking to control CP's property, it is a form of regulation. Therefore, it falls into the broad category of actions that are *per se* preempted under the ICCTA. *Accord CSX Transp., Inc.,* 2005 WL 1024490, at *2; *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp.2d 1009, 1013 (W.D. Wis. 2000) (noting "condemnation is regulation"); *Soo Line R.R. Co. v. City of Minneapolis*, 38 F. Supp.2d 1096, 1099 (D. Minn. 1998) (concluding the city's demolition permitting process was "related to the movement of property by rail [and] is expressly preempted by the ICCTA"); and *Union Pacific*, 2009 WL 448897, at *7 (finding "proposed taking is the type of action that belongs in the *per se* camp").

Because the City's proposed condemnation is *per se* preempted, the City's factual "as applied" arguments concerning whether the proposed easement would unreasonably interfere with CP's activities are not relevant, regardless of whether or not discovery has been commenced. Rather, it is the act of regulation itself that triggers the preemption analysis in this case, not the reasonableness of the regulation. Similarly, the City's reliance on *Franks Investment Co. v. Union Pacific R.R. Co.*, 593 F.3d 404 (5th Cir. 2010) and *District of Columbia v. 109,205.5 Square Feet of Land*, No. Civ. A. 05-202 (RMU), 2005 WL 975745 (D.D.C. Apr. 21, 2005) is misplaced because both cases were

8

analyzed as crossing disputes, not longitudinal condemnations. Therefore, for the reasons stated above, the Court grants CP's partial summary judgment motion and declares that the City's proposed condemnation is *per se* preempted.[2]

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. CP's Motion for Partial Summary Judgment (Doc. No. [11]) is **GRANTED.**


Dated: June 17, 2010                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge

---

2   Because the Court concludes that the City's proposed condemnation is *per se* preempted, it does not reach CP's alternative partial summary judgment argument concerning the STB.